UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY S. BEATTY,

        Plaintiff,      Civil Action No. 16-13533
                 Honorable Thomas L. Ludington
                 Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 19]

  Plaintiff Tammy Beatty ("Beatty") brings this action pursuant to 42 U.S.C. § 405(g),
challenging the final decision of Defendant Commissioner of Social Security ("Commissioner")
denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act
(the "Act"). Both parties have filed summary judgment motions [14, 19], which have been
referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.  RECOMMENDATION

  For the reasons set forth below, the Court finds that the Administrative Law Judge's
("ALJ") conclusion that Beatty is not disabled under the Act is not supported by substantial
evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary
Judgment [19] be **DENIED**, Beatty's Motion for Summary Judgment [14] be **GRANTED IN
PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of
benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to
the ALJ for further proceedings consistent with this Recommendation.

## II.    REPORT

### A.    Procedural History

On January 28, 2014, Beatty filed an application for DIB, alleging a disability onset date of November 19, 2013.  (Tr. 61).  This application was initially denied on March 25, 2014.  (Tr. 72-75).  Beatty filed a timely request for an administrative hearing, which was held on May 12, 2015, before ALJ Paul W. Jones.  (Tr. 30-60).  Beatty, who was represented by attorney Clifford Walkon, testified at the hearing, as did vocational expert Amelia Shelton.  (*Id.*).  On May 22, 2015, the ALJ issued a written decision finding that Beatty is not disabled under the Act.  (Tr. 14-29).  On August 11, 2016, the Appeals Council denied review.  (Tr. 1-7).  Beatty timely filed for judicial review of the final decision on October 1, 2016.  (Doc. #1).

### B.    Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled

regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.    Background**

*1.    Beatty's Reports and Testimony*

At the time of the administrative hearing, Beatty was 45 years old, and at 5'7" tall, weighed 220 pounds.  (Tr. 33-34).  She was living in a house with her husband, who had problems with "his neck and his back" and was receiving disability benefits, and her nineteen year old son, who worked full time.  (Tr. 34-36, 178).  Beatty completed high school and two years of college.  She received a certificate in nursing and previously held a license as a Licensed Practical Nurse ("LPN").  (Tr. 36-37, 151).  She testified she worked as an LPN for about twenty five years; however, she stopped working in November, 2013, when her various conditions became too painful.  (Tr. 39, 150, 164).

Beatty alleges disability as a result of arthritis, multiple foot surgeries and related complications, sarcoidosis, migraines, neuropathy, and hip bursitis.  (Tr. 150).  With respect to her feet, Beatty initially had bilateral foot surgeries in 2012.  (Tr. 155).  She testified she has had problems with her feet ever since.  (Tr. 39).  She indicated she initially stopped working because

she "had an ulcer on her right foot that wouldn't heal," although it was eventually corrected with foot surgery where "they removed part of the bone." (Tr. 39). She also had a "fracture in [her] right foot that [wouldn't] heal" that prevented her from putting weight on her right foot. (Tr. 41). In addition to foot pain, Beatty testified she also experienced pain in her knees and hips, (Tr. 40), and migraines "a couple [times] a week." (Tr. 55).

In terms of her daily activities, Beatty indicated she has difficulty with personal care. (Tr. 179). However, she is able to shower and prepare simple meals. (Tr. 179-180). She puts on pants, shoes and socks with difficulty. (Tr. 179). She testified her husband and son do most of the housework, including mowing the lawn, doing laundry, taking out the trash and preparing most meals. (Tr. 40, 180-181). It is hard to sit or stand, (Tr. 40-41), and Beatty spends most of her day "laying in bed with my feet up. That's where I'm most comfortable." (Tr. 40). Beatty also takes almost two dozen medications, including medicines relating to her arthritis, for pain, for migraines and for other unspecified health problems.[1] (Tr. 401-402). Beatty testified they make her tired. (Tr. 51).

### 2. Medical Evidence

The Court has thoroughly reviewed Beatty's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. Vocational Expert's Testimony

Amelia Shelton testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 44-46). The ALJ asked the VE to imagine a claimant of Beatty's age, education, and work experience who can perform sedentary work, with the following additional limitations:

---

[1] She indicated at the hearing she takes "a good many" medications, (Tr. 50); the most recent medication list in the record is dated March 5, 2015, about two months before the hearing.

can only occasionally climb, balance, stoop, kneel, crouch or crawl. (Tr. 45). The VE testified that the hypothetical individual would not be capable of performing any of Beatty's past relevant work. (*Id*.). However, the VE testified that the hypothetical individual would be capable of working in the representative positions of document preparer (68,000 jobs nationally), call-out operator (14,400 jobs), and telephone quotation clerk (55,000 jobs). (Tr. 45-46).

### D. The ALJ's Findings

At step one of the five-step sequential analysis, the ALJ found that Beatty did not engage in substantial gainful activity since the alleged onset date of November 19, 2013. (Tr. 19). At step two, he found that Beatty has the severe impairments of bilateral foot cellulitis status-post surgeries, osteoarthritis, obesity, peripheral neuropathy, inflammatory polyarthropathy, sarcoidosis, and fibromyalgia. (*Id*.). At step three, he found that Beatty's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 20). The ALJ then found that Beatty retains the residual functional capacity ("RFC") to perform sedentary work, with the following additional limitations: can only occasionally balance, kneel, stoop, crouch, or crawl. (Tr. 20). At step four, the ALJ determined that Beatty is unable to perform any past relevant work. (Tr. 23). At step five, the ALJ concluded, based in part on the VE's testimony, that Beatty is capable of performing a significant number of jobs that exist in the national economy. (Tr. 24). As a result, the ALJ found that Beatty is not disabled under the Act. (*Id*.).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by

a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.    Analysis**

In her motion, Beatty argues that the ALJ erred in failing to properly apply the listing of impairments at step three and in failing to make a proper credibility finding.[2] (Doc. #14 at 11). For the reasons discussed below, the Court agrees.

*1.    The ALJ's Step Three Decision*

The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §404.1525(a). "In other words, a claimant who meets or medically

---

[2] Beatty also makes other arguments in support of her motion. For instance, she argues that the ALJ erred in failing to find her knee and hip impairments and migraine headaches "severe" at step two. (Doc. #14 at 11-15). Because the Court is recommending remanding this matter based on Beatty's other arguments, it declines to address these issues in detail. However, the Court notes that the ALJ did not mention Beatty's migraines at any point in his decision, offering no basis for his decision on this issue at step two, and leaving no indication he properly considered them, severe or not, in formulating Beatty's RFC. *See* 20 C.F.R. § 404.1545(e) (The pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity"); *see also, Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. Aug.11, 2003) (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment). On remand, the ALJ should fully address these issues raised by Beatty.

equals the requirements of a listed impairment will be deemed conclusively disabled." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). It is Beatty's burden to prove that her impairments meet or our medically equal to a particular listing. *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987). "A claimant must satisfy all of the criteria to meet the listing." *Rabbers*, 582 F.3d at 653.

Here, the ALJ considered whether Beatty met the criteria of several listings, including Listing 1.02, which, in relevant part, requires that a claimant establish:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1. In *Reynolds*, the Sixth Circuit summarized the manner in which an ALJ should analyze a physical condition under the listed impairments, holding it is the ALJ's duty to "actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." Without this analysis, "it is impossible to say that the ALJ's decision at Step Three [is] supported by substantial evidence." 424 F. App'x at 416.

Pertaining to whether or not Beatty meets or medically equals the criterion of Listing 1.02A, here the ALJ's entire analysis consists of the following:

> Claimant's arthritis and bilateral cellulitis of the feet status-post surgeries is not severe enough to meet or equal Listing 1.02A. Although there is evidence [sic] degenerative changes in both of claimant's feet and she has had surgery, her physical examinations have been largely normal. Claimant used assistive devices while she was recovering from her surgeries. However, claimant [sic] able to walk without [sic]

8

> effectively, with a single cane, before and after she recovered from the surgeries (testimony and 14F:6).

(Tr. 20). As discussed below, the record evidence does not support the ALJ's finding that the physical examinations of Beatty's right foot were "largely normal."

Beatty underwent four surgeries on her right foot between 2012 and 2015. (Tr. 46-48, 284, 292, 293, 295, 388, 426). The first was intended to correct pes planus (flatfoot). (Tr. 284, 292). Fifteen months after the first surgery, in May 2013, she was still having pain and swelling in her right foot. (Tr. 284). Her treating physician, Dr. Tien, initially attributed these symptoms to "mild midfoot arthritis" and considered her to be "doing well" (notably, this is before Beatty's alleged onset date). (*Id*.). The record makes clear, however, that any improvement was short-lived. In October 2013, just before her onset date, Beatty saw Dr. Tien again complaining of foot pain that was "severe," and a "7/10" making it "difficult for her to work." (Tr. 289). X-rays showed only "healed post-surgical changes" in her right foot, and an adjustment was made to her orthotics. (*Id*.). By February 6, 2014, despite his previously benign records, Dr. Tien indicated Beatty had been experiencing intermittent infection and "some symptoms consistent with neuropathy" in her right foot for "about 3 months." (Tr. 292). Critically, X-rays showed "a broken medial column plate" and "nonunion of the naviculocuneiform joint." [3] (Tr. 292-293).

Beatty subsequently had another surgery in March 2014, in which "[the broken plate was] removed, bone graft placed . . . and . . . [four] cannulated screws placed." (Tr. 426); *see also,* (Tr. 48). These screws subsequently broke, (*Id*.), necessitating a *fourth* surgery in January 2015,

---

[3] Meanwhile, Beatty also had a reoccurring ulcer on her right foot that wouldn't heal, for which she was treated by a podiatrist, Dr. Voulgaris. (Tr. 278-283). The first record relating to this treatment is dated January 8, 2014, and in February, 2014, Dr. Voulgaris referred Beatty back to Dr. Tien, indicating that he believed surgical intervention was again needed. (Tr. 282-283). Here the record is vague, but it reflects that in early 2014 Beatty underwent a right foot surgery in which part of one of the bones in her right foot was shaved to treat the ulcer. (Tr. 47, 293, 295).

in which another treating physician, Dr. Tompkins, removed the screws, performed another bone graft and placed "compression staples." (Tr. 388-389, 430). Dr. Tompkins described this operation as a "salvage type operation," with no guarantees that the underlying nonunion of the naviculocuneiform joint would be resolved. (Tr. 389). He indicated all he could do was "see if it would heal," and that the procedure "may or may not help, or it may make it worse." (*Id.*).

After the third surgery, Dr. Tien had apparently told Beatty she would have to wear a special boot[4] for the rest of her life. (Tr. 49, 389, 426). The record does not reflect whether Beatty required the boot permanently after the fourth surgery, but she was still wearing it every day at the time of her hearing. (Tr. 49). There is also scant evidence as to whether the naviculocuneiform joint healed. A post-operative report by Dr. Tompkins from the day of the fourth surgery indicated "Nonunion, right mid-foot bones . . ." (Tr. 388). Although during post-operative follow-up visits Beatty's surgical wound "looked well," (Tr. 415), her foot remained non-weight bearing, and she used her boot, crutches and a scooter. (Tr. 405, 409, 410). In one record from a rheumatology appointment, the "diagnostic history" section reflects a right foot x-ray taken on January 14, 2015, which indicated "severe degenerative changes involving the navicular cuneiform joints." (Tr. 733). Another x-ray taken on February 23, 2015, contains a comment indicating there "may appear to be some slight signs of fusion." (Tr. 734). However, Dr. Tompkins' exam notes from the actual appointment on February 23, 2015, reflect that his assessment was: "*nonunion of fracture . . . chronic, right foot.*" (Tr. 409). This led to a

---

[4] The ALJ seems to confuse this custom made plastic boot, (Tr. 389, 426), with the "Arizona Brace" Beatty wore far earlier in her treatment, after her initial surgery for flat foot. (Tr. 207, 284). An Arizona Brace is a semi-rigid "leather gauntlet" that can be worn under a shoe and "stabilizes the ankle area, the talocalcaneal, midtarsal and subtalar joints." ARIZONA AFO, *How the Arizona Brace Works*, http://www.arizonaafo.com/default/index.cfm/resources/how-it-works1/ (last visited Oct. 5, 2017). As discussed in greater detail below, this misreading of the record may have impacted the ALJ's negative credibility determination. On remand, the ALJ should carefully review the record in full.

recommendation that Beatty "continue with the boot and the scooter and nonweightbearing." (*Id.*). Further, in his treatment notes Dr. Tompkins states, in reference to Beatty's right foot, "if this is no better then [I'll refer her] to see a foot specialist elsewhere it [sic] nothing else I can do." (*Id.*).

In light of the foregoing evidence, the ALJ's assertion that Beatty's post-surgery "physical exams have been largely normal" (Tr. 20), is not supported by substantial evidence. But this was not the only shortcoming of the ALJ's analysis on this issue. Without citing any particular record, the ALJ wrote, "In February 2015, [x-rays] of [Beatty's] right foot showed signs of union." (Tr. 22). A few sentences later, the ALJ used this same finding to discount Beatty's credibility, writing, "[Beatty testified at the hearing that] she still had non-union in her right foot. Her statement is inconsistent with the evidence of successful surgery and fusion of the joint." (*Id.*). The parties seem to agree that the "evidence" the ALJ was referring to was a February 23, 2015 medical record contained on page 734 of the transcript. (Docs. #20 at 4; #19 at 21). However, that record hardly supports the ALJ's conclusions, as it speculatively and equivocally states, "The hardware in the midfoot has been removed. There *may* appear to be *some slight* signs of fusion." (Tr. 734) (emphasis added).

On remand, the ALJ should explain why Beatty does or does not meet Listing 1.02A's requirements by comparing them against the available medical evidence.[5] *Reynolds*, 424 F.

---

[5] The Commissioner argues that any error was harmless because the record indicates Beatty conclusively does not meet the criteria for the listing. (Doc. #19 at 13-18). The Commissioner's brief contains the type of evaluation the ALJ should have provided in his decision and seeks to have this Court affirm the ALJ's decision based upon an analysis that the ALJ did not perform. However, it is not the function of this Court to review the evidence *de novo,* make credibility determinations or weigh the evidence. *Brainard,* 889 F.2d at 681; *see also*, *Christephore v. Commissioner of Social Sec.*, No. 11–13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) ("[I]t is not the Court's job to conduct a de novo review of the evidence or to rubber stamp the ALJ's decision."). Particularly in light of the above evidence and Beatty's ongoing use of

App'x at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [claimant] put forth could meet this listing.").

## 2. The ALJ's Credibility Determination

The Court also concurs with Beatty that the ALJ's credibility determination is not supported by substantial evidence. As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant is invaluable, and should not be discarded lightly." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (internal quotations omitted); see also *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008). This Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Beatty] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). When assessing an individual's credibility, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged . . ." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011). Here, the ALJ seems to make this finding, concluding that Beatty's impairments give her "limitations." (Tr. 21).

After making such a finding, the ALJ must then "consider the entire case record" to evaluate the "intensity, persistence, and functionally limiting effects of the symptoms" to determine the extent to which these symptoms affect the individual's ability to do basic work activities. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also*, 20 C.F.R. §404.1529(c). A non-exhaustive list of factors to be considered by the ALJ includes: (1) the

---

various assistive devices to ambulate, the Court cannot conclude that Beatty would not be able to meet or at least medically equal the Listing's requirements. At any rate, those questions are ones that must be addressed by the ALJ in the first instance.

individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, the individual has received; (6) any measures the individual uses to relieve his or pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. §404.1529(c). In his written decision, the ALJ must "provide a sufficiently specific explanation for his credibility determination so that it is clear to the individual and any subsequent reviewers the weight given to the individual's statements and the reasons for that weight." *Malcolm v. Comm'r of Soc. Sec.*, 2015 WL 1439711, at *7 (E.D. Mich. Mar. 27, 2015) (internal citations omitted); *see also Winhoven v. Comm'r of Soc. Sec.*, 2013 WL 4483463, at *12 (E.D. Mich. Aug. 19, 2013) ("[T]his Court does not sit to rubber stamp [an ALJ's credibility] assessment; instead, it has the responsibility of determining whether substantial evidence supports it."). In this case, a careful reading of the ALJ's decision reveals that the reasons articulated for discounting Beatty's credibility are not supported by substantial evidence. Moreover, the ALJ failed to consider other evidence that appears to bolster the credibility of Beatty's allegations of disability.

First, as noted above, *supra* at 11, the ALJ erred in discounting Beatty's credibility based on a speculative and equivocal medical record regarding the non-union in her right foot. This error was especially acute given the centrality of Beatty's foot problems to her claim for disability benefits. Second, the ALJ erred with respect to his discussion of the assistive devices Beatty used. For instance, in discounting Beatty's credibility, the ALJ wrote:

> [A]t the hearing, [Beatty] said she needed to use a scooter since January 2015. Her Testimony was inconsistent with her having used crutches after

her January 2015 surgery.

(Tr. 22). But Beatty's testimony that she needed to use a scooter is not inconsistent with the record evidence. After her January 2015, surgery, the record shows Beatty was instructed to use a scooter, crutches, and her boot. (Tr. 390, 409, 415). Reviewing Beatty's testimony (Tr. 48), there is nothing inconsistent with these medical records, as she merely indicated she was at the May 2015 hearing with a scooter, that she had been using the scooter since January 2015, and that it was prescribed. (*Id.*). Presumably, it would be impossible to use a scooter in certain instances where crutches would be a more convenient alternate means of allowing Beatty's right foot to be non-weight bearing. While the ALJ may wish to ask Beatty additional questions about these matters, his use of her testimony to discredit her is not supported by substantial evidence.

The ALJ also discounted Beatty's credibility because she "said she was told to wear her Arizona boot [sic] all day and night, but this testimony is inconsistent with Dr. Tien's stated desire to 'wean' her off from it in 2012." (Tr. 21). As discussed above, *see supra* at 10 n.4, the ALJ seemed to misunderstand Beatty's course of treatment, conflating the "Arizona Brace" that Beatty wore after her first surgery in 2012 with the plastic boot she began wearing after her third surgery in March 2014. To briefly recap, in the interim the plate placed in Beatty's foot broke, she required surgery to remove it, and a bone graft was placed along with four screws to try to address the continued nonunion of her naviculocuneiform joint. (Tr. 292-293, 426). Dr. Tien's desire to wean Beatty out of her Arizona Brace in early 2013 has no relevance to Beatty's testimony that she was told to wear the plastic boot at all times after the March 2014, surgery. (Tr. 49, 409).

Finally, the ALJ discounted Beatty's credibility based on her testimony regarding her daily activities, finding:

> At the hearing, [Beatty] described a living condition that was inconsistent

14

with her being totally disabled. Specifically, although [Beatty] said her husband did most, if not all, of her household chores, [she] also said her husband has been disabled and collecting Social Security for 10 years due to problems with his neck and back. In addition, [Beatty] said her 19-year-old son did the housework, but also said her son worked full time. The evidence suggests claimant is not as limited as she alleges. Specifically, she is able to take care of herself and her disabled husband while her son is working with no particular assistance.

(Tr. 23). Here, the Court agrees with Beatty that the ALJ's analysis is not supported by substantial evidence. (Doc #14 at 21). Beatty's testimony did not "describe a living condition that was inconsistent with her being totally disabled." To the contrary, she testified that she spends most of the day laying in bed with her feet up. (Tr. 40). Beatty also testified that her husband prepares meals, while her son does most of the household chores, such as mowing the lawn and taking out the trash. (*Id.*). The ALJ seems to be discrediting Beatty's testimony because he disbelieved that her husband, who is receiving disability, and her son, who works full time, were capable of performing the household chores that Beatty described. But there is simply no basis for this conclusion. As to Beatty's husband, the ALJ knew only that he was receiving disability benefits because of "[h]is neck and his back" (Tr. 35), which vague description says nothing about his ability to prepare a simple meal. And, as to Beatty's son, it is completely unremarkable that he would work full time and still be responsible for the household chores that Beatty described. It is also unclear to what extent the ALJ's other errors in discrediting Beatty's testimony impacted this portion of this analysis.

For all of these reasons, the ALJ's decision to discount Beatty's credibility is not supported by substantial evidence, and remand is required. *See Peltier v. Comm'r of Soc. Sec.*, 2014 WL 7272760, at *9 (E.D. Mich. Dec. 18, 2014) (Where "the ALJ's selective reliance on 'fragments' of the record amounts to a distortion of the record it cannot be said that substantial evidence supports the credibility determination.") (quoting *Laskowski v. Apfel*, 100 F. Supp. 2d

474, 482 (E.D. Mich. 2000)); *see also*, *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 865 (6th Cir. 2011) ("In sum, while credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence."); *Johnson v. Comm'r of Soc. Sec.*, 2013 WL 4669997, at *11 (E.D. Mich. Aug. 30, 2013) (remanding where the ALJ's credibility determination was not supported by substantial evidence).

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment [19] be **DENIED**, Beatty's Motion for Summary Judgment [14] be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

Dated: October 11, 2017                       s/David R. Grand
Ann Arbor, Michigan                           DAVID R. GRAND
                                              United States Magistrate Judge


**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not

preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th

Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich.

LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with

a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be

concise, and should address specifically, and in the same order raised, each issue presented in the

objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record
and any unrepresented parties via the Court's ECF System to their respective email or First Class
U.S. mail addresses disclosed on the Notice of Electronic Filing on October 11, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager